In re SHRADER P. HOWELL and LEE B. EWING,

Division Two, January 5, 1918.

1. **CONTEMPT: Judgment: Statement of Facts: Collateral Attack.** There being no appeal or writ of error from a judgment for direct or criminal contempt, the findings stated in the judgment may, upon writ of *habeas corpus*, be shown to be untrue.

2. ——: ——: ——: ——: **Jurisdiction: Sec. 2475.** Notwithstanding the rule that the judgment of a court of general jurisdiction imports verity, and despite Sec. 2475, R. S. 1909, prohibiting an inquiry into the legality or justice of a judgment for contempt rendered by any such court, jurisdiction cannot be obtained by the mere assertion in the judgment of facts necessary to sustain it, and such assertion may, upon *habeas corpus*, be shown by evidence to be false.

3. ——: ——: **Mere Recital of Prior Adjudication and Execution.** With the announcement of the punishment for contempt committed in the presence of the court the judgment becomes final except for its formal entry upon the record, which when so entered resembles an ordinary judgment only in form, since the court's adjudication is a conviction, and its consequent commitment an execution.

4. ——: ——: **Forms Yield to Facts.** The rights of the individual being paramount to all others, form, ceremony and blind adherence to precedent are not dominating influences in judicial action; the wise and wholesome administration of justice requires that the facts of a given case be fully known.

5. ——: **Grounds: Extra-Statutory.** The manifestations of contempt being as varied as human actions, the power of the court to punish for contempts is not limited by Section 3881, Revised Statutes 1909, defining a direct contempt to be any disorderly, contemptuous or insolent behavior committed during the session

of the court in its immediate view and presence and directly tending to interrupt its proceedings or to impair the respect due to its authority, comprehensive as those terms are; but the power, being inherent, is, in the absence of constitutional inhibition, free from definitive action by the Legislature.

6. ———: Attorneys.  The course pursued by counsel in the conduct of a case, if deferential, cannot constitute direct contempt.

7. ———: ———: Filing Pleading or Motion.  The respectful filing of a pleading or motion which may reasonably be termed pertinent and not in its terms offensive, is not contemptuous.

8. ———: ———: ———: Suggesting Disqualification of Judge.  The repeated filing of motions suggesting the disqualification of· the judge, if done in a respectful manner, although deemed by him to be for vexation and delay, does not constitute contempt.

9. ———: ———: Judicial Tyranny.  If the power of courts to limit counsel in the courteous presentation of what they may deem errors in a case be conceded, a condition of judicial tyranny will be rendered possible, which sooner or later will defeat the purposes for which courts were created, namely, the impartial adjudication of controversies.

10. ———: ———: Application for Change of Venue: Prejudice of Judge: Refusal to Proceed With Trial.  A filing of an application for a change of venue by special counsel for the State and the Assistant Attorney-General on the ground of the prejudice of the judge, and, upon its being overruled, a declining to proceed with the trial, though ordered so to do, and a stating in connection therewith, that the court is without jurisdiction, unaccompanied by any manifestation of disrespect, do not constitute direct contempt, whether or not the statute permits the State to disqualify the judge.

11. ———: Attorney-General: Refusal to Proceed With State Case.  The duty of the Attorney-General and his representatives, acting under the direction of the Governor, is to assist the prosecuting attorney in the trial of a criminal case; and where the latter officer, without valid reason, has refused to participate in the prosecution, and the court therefore can direct him to conduct the trial to a conclusion, the conduct of the former officers, after their application for a change of venue has been denied, in declining to proceed with the trial, is not such an interruption of the proceedings of the court and the administration, of justice as amounts to contempt.

12. ———: ———: Duty of Prosecuting Attorney.  In the absence of any fact disqualifying the prosecuting attorney, his sworn duty requires him to participate in the trial of a criminal case, in

273 Mo.—7

In re Howell and Ewing.

which the Attorney-General or his representatives have been directed by the Governor to assist him. The statute (Sec. 1007, R. S. 1909) defining his duty is mandatory.

13. ———: Disqualifying Judge: Prejudice: Statute. The acts of the petitioners being contemptuous neither in themselves nor on account of the manner in which they were performed, it is not necessary to determine whether a motion on the part of the State in a criminal case which constituted a challenge of the judge's qualification was authorized under that subdivision of Section 5198, Revised Statutes 1909, which provides that a judge shall be incompetent to hear and try a case when in anywise interested or prejudiced.

14. ———: Disqualification of Judge: Suggested by State's Attorney: Voluntary Retirement. A condition of the public mind may exist in a locality which would impel a public prosecutor, in an honest effort to discharge his duty, to call the regular judge's attention to circumstances indicating that he had, without corrupt intent, prejudged the case; and as this would involve no question of personal integrity, upon the suggestion of prejudice under Section 5198, Revised Statutes 1909, the judge, prompted by that sense of delicacy and duty which renders him averse to judicial action upon an intimation of his interest in the matter at issue, will retire and call in another to try the case, and that course is authorized by Section 5201.

## Habeas Corpus.

PETITIONERS DISCHARGED.

*Frank W. McAllister*, Attorney-General, and *John T. Gose*, Assistant Attorney-General, for petitioners; *W. T. Rutherford* of counsel.

(1) In *habeas corpus*, when the petitioners seek release from punishment for an alleged criminal contempt, this court will go behind the return, commitment and judgment, and ascertain the facts, and determine whether or not the facts warrant the judgment. Ex parte Creasy, 243 Mo. 679; Ex parte O'Brien, 127 Mo. 477. (2) Direct criminal contempt of court is defined to be "disorderly or insolent behavior committed during the session and in the immediate view and pres-

ence of the court, directly tending to interrupt its proceedings or impair respect due its authority . . . or wilful disobedience of any process or order lawfully issued or made;" or "wilful disregard of the authority of the court rightfully exercised;" or "wilful disregard of the authority of courts." R. S. 1909, sec. 3881; Powell v. State, 48 Ala. 156; Black's Law Dictionary (2 Ed.), p. 257; Anderson's Law Dictionary, p. 242; 2 Words & Phrases, p. 1489; Bouvier's Law Dictionary. (a) That which is done by permission of the court cannot be done in defiance of the court or in contempt of the court. That which is done respectfully, cannot be done insolently or contumaciously. "He is not to be heard, who alleges things contradictory of each other." Broom's Legal Maxims, 135. (b) There can be no criminal contempt of court where the act is done in good faith, and in the honest belief that it is authorized by the facts and the law. Therefore, petitioners cannot be guilty of contempt, if they filed the affidavit in question in good faith, believing that the judge was prejudiced and that the law authorized the procedure. This is true, notwithstanding petitioners might have been mistaken, both as to the law and the facts. Broom, Leg. Max. 256; Rapalje, Contempt, sec. 121; Oswald, Contempt, 56, 57, 51, 52; Willis v. Comm., 21 Gratt. (Va.) 500; In re Wooley, 74 Ky. 95; Ex parte Biggs, 64 N. C. 202; People v. LaFetra, 171 App. Div. (N. Y.) 275; Clair v. State, 40 Neb. 534; Hawes v. State, 46 Neb. 149; State v. Jasper, 88 S. E. (W. Va.) 1096; Thomas v. People, 14 Colo. 257; Ex parte Curtis, 3 Minn. 274; Mullins v. People, 15 Colo. 441. (c) If, after filing the affidavit of prejudice against the judge, petitioners refused to proceed because they in good faith believed the judge was without any further jurisdiction, to try the cause, then petitioners were not guilty of any contempt. Authorities above. (3) In filing the affidavit, charging Judge Slate with prejudice, and in refusing to further proceed with the cause, and asking leave to apply to the Supreme Court for a writ

of prohibition, did the petitioners act in good faith? Upon the uncontroverted facts, this question must be answered in the affirmative. (a) Because petitioners asked and obtained leave to file the application and affidavit before it was filed. ' (b) Because the petitioners were respectful and courteous in manner and conduct, when filing the affidavit and while refusing to proceed and asking to be allowed time to apply for a writ of prohibition. (c) Because the judge had stated that he expected to rule in the case then about to be tried (State v. John W. Scott), as he had ruled in the former Scott case. In the latter case the paramount issue was the intent with which the act was done, and the State had offered testimony of like transactions by the accused for the purpose of showing intent. This testimony was excluded. This ruling was wrong and very prejudicial to the State. The statement of Judge Slate that he would adhere to this rule in the cause pending, which was the same character of a case, the same charge, larceny and embezzlement, the same prosecuting party, and many witnesses the same, clearly showed prejudice, to-wit, prejudgment. Such character of testimony was clearly admissible. State v. Patterson, 196 S. W. (Mo.) 3; State v. Schnettler, 181 Mo. 189, 190; State v. Williams, 136 Mo. 294, 297, 308; State v. Myers, 82 Mo. 558; Kelley's Crim. Law and Practice, 247; Wharton's Crim. Evidence (10 Ed.), 1665. (d) Because Judge Slate had said that he did not see how the regular panel of jurors that had tried the former case of State v. Scott, would be disqualified to try the pending case of State v. Scott. The charges in the indictment in each case were alike, to-wit, larceny and embazzlement of coal belonging to the State; the prosecuting party was the same, the defendant was the same, many of the witnesses were the same, and of necessity much of the testimony would have been the same. The State and the defendant were alike entitled to a jury that was free from any opinion or bias as to any of the facts in the case. R. S. 1909, secs. 5219, 5220; Stephens v. State, 53 N. J. L. 245; Curtis v. State, 118 Ala. 125; Baker v. Harris, 60 N. C. 271.

(e) Because the rulings of the judge and his state-
ments and acts were ample to justify the belief in his
prejudice by petitioners. Mullins v. People, 15 Colo.
441. (f) Because the sworn statements of petitioners
are that they were acting in good faith, and they so
stated at the very time of the alleged contempt. (g)
Because, under the law the State has the right to
file an affidavit against a judge who is prejudiced,
charging that fact, and thereby secure a trial before
a fair-minded and unprejudiced judge. See author-
ities under next point. (4) When a judge is prejudiced
against it, and in favor of the defendant, the State,
in a criminal cause, has the right to present an affidavit
charging that fact and thereby obtain a trial before
an unprejudiced judge. Art. 6, sec. 29, Mo. Constitu-
tion; Sec. 5198, R. S. 1909; Sec. 2594, R. S. 1899;
Laws 1895, p. 162, 164; Sec. 4174, R. S. 1889; Sec.
1877, R. S. 1879; Laws 1877, p. 357; Vol. 2, chap.
111, art. 5, sec. 15, Wag. Stat.; Chap. 212, sec. 15, G.
S. 1865; Chap. 127, art. 5, sec. 16, R. S. 1855; Chap.
138, art. 5, sec. 16, R. S. 1845; Sec. 16, p. 486, R.
S. 1835; Vol. 1, p. 276, sec. 23, R. S. 1825; Laws 1804
to 1824, p. 117, sec. 32 (Ty. Laws 1807); Laws 1804
to 1824, p. 617, sec. 5 (Ty. Laws 1818); Laws 1804
to 1824, p. 687, sec. 20 (Ty. Laws 1820); Sec. 3867,
R. S. 1909; Sec. 1602, R. S. 1899; Sec. 3247, R. S. 1889;
Sec. 1041, R. S. 1879; Sec. 21, p. 539, G. S. 1865; Sec.
41, p. 539, R. S. 1855; Secs. 39 and 40, p. 335, R. S.
1845; Secs. 38 and 39, p. 159, R. S. 1835; Sec. 23,
p. 276, vol. 1, R. S. 1825; Broom's Legal Max., 125;
Jim v. State, 3 Mo. 147; State ex rel. v. Wofford,
111 Mo. 526; State ex rel. v. Wear, 129 Mo. 619; Peo-
ple v. Connor, 142 N. Y. 130; Coal Co. v. Doolittle, 54
W. Va. 227; Commonwealth v. Davidson, 91 Ky. 162.
(a) Notwithstanding that at the common law and under
the Constitution of this and many other States the
accused is entitled to a trial by an impartial jury of
the vicinage, or county, yet, if an impartial jury can-
not be obtained, the venue may be changed on the appli-
cation of the State. Com. v. Davidson, 91 Ky. 162;
Chitty's Crim. Law & Prac. (Ed. 1847), p. 201; Rex

v. Cowle, 2 Burr, 859-860; Rex. v. Harris, 3 Burr, 1333; State ex rel. v. Durflinger, 73 Ohio St. 154; Hewitt v. State 43 Fla. 194; Barry v. Truax, 13 N. D. 131; People v. Baker, 3 Park Cr. (N. Y.) 181; 1 Bishop's Crim. Proc., sec. 73, 113; State v. Gates, 20 Mo. 404. (b) Upon the filing of the affidavit charging prejudice against Judge Slate, he had no power to try the question of his own prejudice, and was wholly without jurisdiction to compel any further steps in the cause. Broom's Leg. Max., p. 94; State v. Spivey, 191 Mo. 99-105; State v. O'Rourke, 55 Mo. 440; Sec. 5198, R. S. 1909; Sec. 19, p. 845, G. S. 1865; Sec. 1927, R. S. 1909; Sec. 1930, R. S. 1909; Guy v. Railroad, 197 Mo. 180; 2 Bailey on Habeas Corpus, p. 1393. (c) If the court was without jurisdiction, any order it made was void, and there could be no contempt for failure to obey the same. Railway Co. v. Wear, 135 Mo. 265. (5) The judgment and commitment in this cause, after striking therefrom the alleged statement of the petitioner Ewing that "if it is necessary for some one to go to jail in order that the State may obtain justice in this case, I will go," is void upon its face, because it fails to set forth the facts constituting the alleged contempt. The statement of petitioner Ewing was not made until after the judgment and commitment was rendered, and constituted no part of the alleged contempt. Sec. 3884, R. S. 1909; Ex parte Creasy, 243 Mo. 702-8; Ex parte Stone, 183 S. W. (Mo.) 1058; People v. LaFetra, 171 App. Div. (N. Y.) 272. (6) A judgment for contempt cannot be upheld if it falsely recites the facts, or is imposed for some personal motive, or to gratify some personal resentment of the judge. If the judge refuses to permit the official stenographer to take down and record the proceedings, stating in effect, that it is only a matter between him and petitioners, the judgment should not be permitted to stand, and petitioners should be discharged. Ex parte Creasy, 243 Mo. 696; Ex parte O'Brien, 127 Mo. 489. A contempt of court is a public wrong, and not an injury to the person or functionary to whom it is offered. Van Orden v. Sauvinet, 24 La. Ann. 1191;

Ex parte Hickey, 12 Miss. 783; Ex parte Nelson, 251 Mo. 97.

*Irwin & Haley* and *A. T. Dumm* for respondent.

WALKER, P. J.—Relief by *habeas corpus* is invoked by petitioners in this court to effect their discharge from an alleged unauthorized judgment of commitment for contempt rendered against them by the judge of the circuit court of Cole County.

The writ was granted as prayed and made returnable on a day certain. The sheriff of Cole County, who held petitioners in custody, made return to the writ, to which petitioners filed their reply. The facts as set out in the judgment of commitment with which the return is in accord, having been put in issue by the reply of petitioners, the court appointed Virgil V. Huff, Esq., as a special commissioner, to take testimony concerning the disputed facts and report his findings of fact and conclusions of law in relation thereto. The commissioner having heard the testimony, filed herein a transcript of same, together with his findings and conclusions in conformity with the order of his appointment. To this report the sheriff filed his formal exceptions. The issue has been presented *in extenso*. Counsel for the respective parties have argued the matter orally and have filed printed briefs and arguments herein.

The facts out of which this proceeding arose are as follows:

In November, 1917, there was pending in the circuit court of Cole County, in which Hon. John G. Slate presides as judge, a criminal case entitled the State v. John W. Scott, in which the defendant was charged with the larceny and embezzlement of coal belonging to the State. The Attorney-General had been directed by the Governor to appear and assist the prosecuting attorney in the trial of this case. Petitioners, representing the Attorney-General and at his behest, appeared in the circuit court and tendered their service to assist the prosecuting attorney. The latter refused to par-

ticipate in the prosecution, whereupon the court announced that the case would be conducted for the State by the petitioners. The latter having secured a formal entry permitting the endorsement of the names of certain witnesses on the indictment, announced ready for trial, but requested, in addition, that the State be not restricted in the selection of triers of the fact to the regular panel of jurors, for the reason that during that term of court and a few days prior thereto, a trial panel had been chosen from these jurors, the members of which had sat in the trial and had rendered a verdict of acquittal in a criminal case charging a like offense, similar in all of its material features to the one then before the court, and against this same defendant. The court overruled petitioners' suggestion, announcing that the jury was not disqualified for the reason stated by petitioners. Furthermore, the court announced in response to an inquiry of petitioners, that the ruling made during the trial of the former case of like character to that before the court and also against said Scott, in regard to testimony of similar transactions by him at or near the time of the act charged in the pending indictment, would be adhered to in the trial of this case; and that testimony of this character would not be admitted to show intent or for any other purpose. Petitioners then withdrew their announcement of ready for trial and stated that they desired time to file an application for a change of venue on account of the prejudice of the judge against the State. Upon the petitioners having signed and made oath to said application before the clerk of the court, the judge ordered it not to be filed until he had read it. After reading it the court granted petitioners leave to file same. This was done and at once overruled by the court. Counsel for defendant then announced ready for trial. Mr. Ewing, one of the petitioners, then asked for time within which to apply to the Supreme Court for a writ of prohibition against the judge, on the ground of a lack of jurisdiction after the filing of the application for a charge of venue. The court refused to grant

time for that purpose, his language being, "That will be refused. You must proceed with this case." To which Mr. Ewing replied: "I decline to proceed on account of the attitude of the judge." To which the latter replied: "I permitted you to file this application for a change of venue although I thought it was a frivolous proceeding. If, however, the representatives of the Attorney-General's office want to parade their ignorance before this court and the attorneys present, I guess I can stand it, but I want to warn you that I am getting tired of your frivolity and that you won't tamper any longer with the court," adding: "Proceed with the trial of this case. Either continue, dismiss or go on with the trial. The witnesses are present, the jurors are on hand and the defendant has answered ready and he is entitled to a trial at this time. I want to know what you are going to do?" To which Mr. Ewing said: "You are evidently about to fine us for contempt, but before you do so 1 want to say that we never filed a pleading with greater earnestness than when we filed this application for a change of venue." The judge, after again ordering them to proceed, said: "In view of the fact that you have filed in this court a motion which, to say the least, is frivolous, and because you refuse as representatives of the Attorney-General's office to proceed with this case, I will adjudge you guilty of contempt and fine you fifty dollars each, and I want satisfactory proof that these fines are paid out of your own pockets and not out of the Attorney-General's contingent fund." "We decline to pay the fines," said Mr. Ewing. "In that event," said the judge, "you are ordered committed to jail until the fines are paid or you are discharged by due course of law." Addressing the sheriff, the judge said: "Mr. Richter, take charge of these attorneys." Mr. Ewing then said to the court: "If it is necessary for somebody to go to jail in order that the State may get justice in this case, I am ready to go." "Be careful," said the judge, "or I will fine you again." From time to time during this scene petitioners asked that the court require the official stenog-

rapher to make a note of the proceedings in the order of their occurrence. The stenographer took a position in front of the court's bench preparatory to taking notes of the proceeding when the court interrupted him saying: "Never mind about that. This is a matter between the attorneys and the court." The stenographer thus admonished did not take the notes.

The variance between the facts, as disclosed in the testimony and as they appear in the findings of the trial court's judgment, renders a full transcript of the latter necessary to a correct understanding of the case. Omitting the caption, certificate of the clerk as to the correctness of the transcript of the judgment, and incorporating only the body of the application for a change of venue, the judgment and order of commitment are as follows:

"Whereas, Lee B. Ewing and S. P. Howell, duly licensed and practicing attorneys-at-law, were adjudged guilty of contempt of court, and each of them, by the circuit court of Cole County, Missouri, for contempt committed in the immediate view, presence and hearing of the court, by its judgment then and there pronounced, and entered of record among proceedings of said court on the 27th day of November, 1917, which said judgment was in words and figures as follows:

"It is ordered and adjudged by the court that Lee B. Ewing and S. P. Howell, attorneys, practicing in this court, and each of them, be fined $50 for contempt of court committed in the immediate view, presence and hearing of the court, on the 27th day of November, 1917, while the circuit court of Cole County, State of Missouri, was in regular session and during the sitting of said court for the transaction of business that might lawfully be brought before it for consideration, in this: That the said Lee B. Ewing and S. P. Howell, and each of them, did wilfully, knowingly and contemptuously file in this court, for and upon behalf of the State of Missouri in a certain cause lawfully pending in said court, what purported to be an application for a change of venue in said cause, which application for a change

of venue is in writing and in words and figures as follows:

" 'Comes now the State of Missouri, plaintiff in the above entitled cause, and files its application herein, and says that the Hon. John G. Slate, judge of this court, is prejudiced in this cause against the State, and that by reason of such prejudice, the said judge, by the terms of section 5198, Revised Statutes 1909, is disqualified and prohibited from sitting as judge of this court upon the trial of this cause.

" 'Wherefore, the State says this court is disqualified to proceed further in this cause,· than in accordance to the provisions of Section 5201, Revised Statutes 1909, and therefore prays that he make an order accordingly granting the State a change of venue herein.'

"Which said foregoing motion and application for a charge of venue was by the court overruled and denied.

"That thereafter and thereupon, and while the case of the State of Missouri v. John Scott was then and there pending before the court, wherein the said John Scott is charged with the crime of embezzlement and grand larceny, and while said Scott was present in person in court, and by counsel, and demanding a trial, within his constitutional rights, upon said charge, and the said Lee B. Ewing was present in court as special counsel for the State of Missouri, and the said S. P. Howell was present in court as Assistant Attorney-General, both of whom were in charge of said cause and prosecuting for and upon behalf of the State of Missouri, and appearing for and in the place and stead ' of the prosecuting attorney of Cole County, Missouri, in said cause; and the court having then and there inquired of them as to whether or not the State of Missouri was ready for trial in said cause, and that thereupon the said Lee B. Ewing and the said S. P. Howell ·in the immediate view, presence and hearing of the court, and the regular panel of the petit jury then and there assembled, wilfully and contemptuously refused to make answer, although often requested so to do by the

court, and the said Lee B. Ewing and the said S. P. Howell did then and there state to the court that the State of Missouri could not have a fair and impartial trial before the court then sitting in said cause, and that said court was without jurisdiction to hear and determine said cause, which said statement was made in the immediate view, presence and hearing of the court and the said jurors then assembled for the trial of said cause, and the said Lee B. Ewing and the said S. P. Howell then and there refused to proceed further, or to take any further action in said cause; that thereupon the said Lee B. Ewing and S. P. Howell were admonished by the court that they must either answer ready for trial, or ask for a continuance, or take some other proper action in said cause; whereupon the said Lee B. Ewing and S. P. Howell in the immediate view, presence and hearing of the court and jury, stated that they refused to do either—answer ready for trial, ask for a continuance, or take any further action in the said cause—and after being fully and duly warned by the court that their refusal to take any action whatsoever in said cause would be treated as wilful contempt by them, and each of them, of the court; the said Ewing and Howell again stated in the immediate view, presence and hearing of the court and the jury, wilfully, knowingly and contemptuously, that they were willing to be adjudged in contempt of the court and go to jail in order to get justice in said cause, thereby wilfully, knowingly and contemptuously accusing the court, in the immediate view, presence and hearing of the court, the jury, and a large number of persons there assembled, of being partial towards the defendant, and unduly prejudiced against the State of Missouri in said cause; and that thereafter the said Ewing and Howell refused to further answer, but wilfully and contemptuously stood mute and refused to take any action whatever in said cause; that the said Lee B. Ewing and the said S. P. Howell did then and there, in the immediate view, presence and hearing of the court, by their words, act and gestures, offer and commit wilful

contempt in the immediate view, presence and hearing of the court.

"Wherefore, the court doth, by reason of the premises aforesaid, adjudge the said Lee B. Ewing and S. P. Howell, and each of them, in wilful contempt of the court and doth assess the punishment of the said Lee B. Ewing and the said S. P. Howell, and each of them, at a fine of $50 and that the said Lee B. Ewing and the said S. P. Howell, and each of them, stand committed to the common jail of Cole County, Missouri, until said fines of each of them shall be paid, or until they shall be discharged by due course of law; and whereas the said Lee B. Ewing and the said S. P. Howell, and each of them, doth refuse to pay said fines so assessed against them, it is therefore ordered and adjudged that the said Ewing and the said Howell, and each of them stand committed to the common jail of Cole County, Missouri, until said fines of each of them shall be paid, or until they shall be otherwise discharged by due course of law.

"These are, Therefore, to command you, the said sheriff of Cole County, Missouri, forthwith to convey and deliver into the custody of the keeper of the county jail of said county the body of the said Lee B. Ewing and S. P. Howell, and each of them, so as aforesaid found guilty of contempt and adudged by the said circuit court to be imprisoned therefor in the county jail until further order of this court, or until they be otherwise discharged by due process of law; and you, the said keeper of the said jail, are hereby required to receive the said Lee B. Ewing and S. P. Howell, and each of them, into your custody and them confine in the jail of said county until the further order of this court, or until they be otherwise legally discharged by due process of law; and for so doing this shall be your warrant."

In re Howell and Ewing.

I.   The judgment herein from which petitioners seek relief relies for its potential force upon a finding of direct contempt alleged to have been committed in the face of the court.   It is urged preclusively rather than affirmatively, that the findings of this judgment are conclusive, and that no ulterior inquiry can be made into the facts, the effect of which may be to question its validity; the contention being in brief, as is the general rule, that the judgment imports absolute verity—its face constituting not only a certificate of the legitimacy of its origin but of its present good character.   While the older authorities in other jurisdictions, from which the textwriters deduce statements of principles, unqualifiedly apply the general rule of immunity from collateral attack to judgments of the character here in question, we hold otherwise. Here one convicted of direct contempt in seeking relief through *habeas corpus* is not limited to an inquiry as to the convicting court's jurisdiction, but, if the truth of the findings upon which the judgment is based is denied in the petitioner's reply to the return, inquiry may be made in regard thereto.   To this extent we have, as has been done elsewhere (Counselman v. Hitchcock, 142 U. S. 547; Ex parte Fisk, 113 U. S. 715; Ex parte Irvine, 74 Fed. l. c. 959), brushed aside the hard-and-fast rule which theretofore hedged about judgments for direct or criminal contempt rendering them immune from attack; and have authorized an inquiry to test the truth of their findings.   [Ex parte Creasy, 243 Mo. l. c. 688, 694.]   The wisdom and wholesomeness of this modification of the general rule is supported by reason and justice.   There is no appeal or right to a writ of error from a judgment for direct or criminal contempt; no provision having been made therefor by statute, the right does not exist.   [In re Clark, 208 Mo. l. c. 146.]   Absent the right of appeal no opportunity for a full review of the proceedings is afforded except by *habeas corpus*.   Resort to the writ of *certiorari* some-

*Contempt: Conclusiveness of Judgment.*

times employed in other jurisdictions will not afford
relief, because, as is not infrequently the case, the pro-
ceedings concurrent with and provocative of the judg-
ment for contempt, are not preserved in the record and
hence cannot be brought up for review.  By invoking
the aid of *habeas corpus,* however, which is always con-
strued in favor of the liberty of the citizen, an oppor-
tunity is afforded in a case of the character here under
consideration, to look beyond the commitment and its
recitals into the evidence    and  circumstances   upon
which    the   court   below   acted,    and    determine
therefrom,    although    jurisdiction    of    the    person
and subject-matter be conceded, whether the court had
authority to render the judgment; or generally whether
the third essential to the court's right of action existed.
This manner of exercise of the right of supervision
and control of inferior tribunals whether it rests in the
Constitution or arises out of the common law, as one of
the attributes of a court of superior jurisdiction, is
held to be authorized notwithstanding the provisions
of the Statute (Sec. 2475, R. S. 1909) prohibiting an in-
quiry into the legality or justice of any process, judg-
ment, decree or order of any court legally constituted
or the justice or propriety of any commitment for con-
tempt made by any court, body or officer and plainly
charged in such commitment.  It being held that al-
though such commitment may recite the existence of
the necessary jurisdictional facts to sustain it, the au-
thority of a court or officer cannot be acquired merely
by asserting it or by falsely alleging its existence,
and hence the evidence may be inquired into to deter-
mine the truth.   [Ex parte Creasy, 243 Mo. 1. c. 695;
Ex parte O'Brien, 127 Mo. 1. c. 489.]  Elsewhere similar
statutes have received a like construction (People ex
rel. v. Liscomb, 60 N. Y. 559; People v. Cassels, 5 Hill,
164; Ex parte Duncan, 62 S. W. (Tex.) 758; Ex parte
Juneman, 28 Tex. App. 1. c. 488.]  Viewed from every
vantage the reasons for the exemption of judgments for
direct contempt from the ordinary rule of immunity
from collateral attack, become more apparent.  In other

proceedings the judge stands indifferent between the parties; the procedure is along a beaten pathway found from experience most promotive of justice; and the judgments resulting therefrom are not only entered under the supervision of the court, but are subject, before becoming conclusive, to the scrutiny and criticism of opposing counsel. Thus rendered, the possibility of their findings incorrectly stating the facts cn which they are based are remote if not impossible. Under such circumstances it is not difficult to account for the origin and permanence in our jurisprudence of the rule ordinarily applicable that the findings of a judgment shall import verity and that its conclusion shall be inviolable. The characteristics of such a judgment are entirely different from those which distinguish a judgment for direct contempt. The latter is summary and in a sense *ex parte* in that the court is the only active factor in its rendition. Whatever part the contemner may have contributed to it was completed before the action of he court commenced. With the announcement of the punishment inflicted the judgment became final except for its formal entry upon the record. When so entered its only resemblance to an ordinary judgment is in its form. The court's adjudication is a conviction and its commitment in consequence an execution. [Ex parte Kearney, 7 Wheat (U. S.), l. c. 43.] The judicial poise, therefore, which enables the upright judge to hold the balance of justice evenly and fairly in an ordinary case is difficult to maintain in a proceeding for direct contempt. This is due more perhaps to the limitations of nature than purpose on the part of the judge. Being human, his impulses and passions are subject to the same influences which actuate other men; and while a contempt of court is, as its words clearly indicate, a manifestation of disrespect towards a tribunal in which justice is administered, the judge in whose presence and hearing the offense is committed maintains indeed the true judicial attitude, if in passing judgment on the offender, he assesses the punishment free from any feeling of personal affront. The

In re Howell and Ewing.

danger of this not being done constitutes an all-sufficient reason why a court of review should in a case of this character carefully consider all of the facts leading up to the judgment to determine if justice has been fairly administered and not content itself with the conclusiveness of the face of same as in ordinary cases. A contrary ruling involves, not only in its essence but in its application, the absurd conclusion that the judge, although his *fiat* determines a question of personal liberty, is incapable of acting intemperately or unwisely, even where he may regard himself, through a mistaken idea of what contempt consists, as personally concerned; or that the courts are surrounded by a sacred aura which precludes inquiry into their actions lest their dignity be lowered, their efficacy lessened or their existence endangered. Fortunately, however, for the rights of the individual—paramount to all else in a free country—form, ceremony and a blind adherence to precedent are no longer, if they ever were, dominating influences in judicial action. Year by year the rulings of courts of last resort exemplify this fact. Technicalities are being swept away; and precedents are followed if reason supports their application, but not otherwise. What the courts require and demand in the wise and wholesome administration of justice is that the facts in any given case may be fully known. Justice, it is true, is typified as being blind, but only as indicative of her impartiality. Deafness has never been designated as one of her attributes. Deprived of this sense, the suitors at her shrine would receive but haphazard consideration. For these reasons, therefore, and others not necessary, in a proper conservation of time and space, to be added, we give our unqualified approval to the rule announced in the Creasy (243 Mo. 679) and O'Brien (127 Mo. 477) cases and impliedly endorsed in the Clark case (208 Mo. 121), to the effect that in a proceeding by *habeas corpus* to secure the release of one from a commitment for a direct contempt, we will look beyond the findings of the judgment where the truth of same as set forth in the

273 Mo.—8

return is denied by the contemner, to ascertain the full facts from which the right to the writ may be determined.

II. The right of review not being confined to the findings of the commitment, let us inquire whether these findings are sufficiently in accord with the facts to sustain the judgment. If not, and the variance is inadvertent, it is unexcusable; If wilful, it is worse. A more specific characterization is unnecessary because it is not conceivable, either in this or any other case, that a judge charged with the administration of justice and having a purpose only to preserve the dignity of the court in which he presides, will countenance or even tacitly consent to the making of a falsified record to sustain judicial action. Summarized, the findings upon which the judgment is based are as follows: filing the application for a change of venue; declining to proceed with the trial; saying to the court that the State could not have a fair and impartial trial in that tribunal; that the court was without jurisdiction; before the judgment of conviction was announced that petitioners were willing to go to jail in order to get justice; and in accusing the court, in its presence and hearing and in that of a large number of persons there assembled, of partiality to the defendant and prejudice against the State. The uncontradicted testimony of the witnesses sustains only three of these findings, viz: (1) filing the application for a change of venue; (2) declining to proceed with the trial; and (3) stating that the court was without jurisdiction. This last may properly be considered in connection with the declination to proceed with the trial, because it is shown to have been stated as a reason for not so proceeding.

The statute (Sec. 3881, R. S. 1909) so far as its terms are applicable to the facts here, defines a direct contempt to be any disorderly, contemptuous or insolent behavior committed during the session of the court in its immediate view and presence and directly tending to interrupt its proceeding or to impair the respect due to its authority. Comprehensive as is this defini-

*Insufficient Facts.*

tion it is not to be construed as a limitation upon the right of the courts to punish for contempt, this power being, as we held in State ex inf. v. Shepherd, 177 Mo. 205, and in Ex parte Crenshaw, 80 Mo. 1. c. 453, inherent, is, in the absence of constitutional inhibition, free from the definitive action of the Legislature. In this general declaration as to the power of the courts we are not unmindful of the modification of the rule in the Shepard case in Ex parte Creasy, 243 Mo. 680, 708, which, however, under the facts, does not affect the matter at issue.

The manifestations of contempt being as varied as the actions of the human mind (6 R. C. L. 491, sec. 4), it remains to be determined, regardless of the statute, whether either or all of the three findings sustained by the facts are sufficient to establish the contumacy of the petitioners. A few general observations, although trite, may serve to clear the atmosphere for the concrete consideration of the question. Primarily courts are constituted to settle controversies. The nature of the matter in dispute is immaterial. It may involve the right of that intangible thing we call the State, to punish an offender for an infraction of the law, or the settlement of differences between private individuals. In short, a court is, in a sense, a clearing house for errors. Its purpose is to determine the right conclusion to be reached in a given case. If the question involved be not controverted, it is not for its consideration. The course pursued, therefore, by counsel in the conduct of a case, if deferential, can constitute no ground of offense. In a somewhat careful review of the authorities we have been unable to find any case in which it is held that the respectful filing of any pleading or motion, which may reasonably be termed pertinent and not in its terms offensive will be regarded as contemptuous. In Johnson v. State, 87 Ark. 45, it is affirmatively ruled that the repeated filing of motions suggesting the disqualifications of a judge, if done in a respectful manner, will not, although deemed by the trial court to be for vexation and delay, constitute

contempt. A holding to the contrary would in our opinion tend to limit the right of counsel to the detriment of litigants. If this latitude be denied, the full purpose of a court's creation will cease and the reason for its existence will be at an end. If the power of the courts to thus limit counsel in the courteous presentation of what they may deem errors in a case be conceded, a condition of judicial tyranny will be rendered possible, which will sooner or later make the administration of justice a farce and the impartial attitude of courts a by-word. If this conclusion is in accord with reason, then the challenge to the fairness of the judge made by counsel for the State and styled in the record a motion for a change of venue, did not, in itself, constitute such a mark of disrespect or a matter of offense as to merit punishment. The burden of the motion was not to assail the integrity of the court, but that it had prejudged the case. We must look therefore to the manner in which the motion was made to determine if the action of the court can be sustained, for a contempt like a crime, must be measured by the intent with which it is committed. [People ex rel. v. La Fetra, 171 N. Y. App. Div. 269; Wells v. Commonwealth, 21 Gratt. (Va.) 500; Ex parte Biggs, 64 N. C. l. c. 217.] Counsel asked leave to file the motion, stating the reason therefor, and citing the statute under which it was claimed to be authorized. The court, while questioning the application of the statute, except when invoked by a defendant, granted the request. The motion was prepared, examined by the court and permitted to be filed. It was then overruled and counsel directed to proceed with the trial. If, up to this point, there was any semblance of contempt in the conduct of counsel, the record does not indicate it, nor is it established by the testimony of witnesses present during the entire transaction. The judge himself did not so regard it. Ever alert, as he should be, to preserve the dignity of his tribunal, he found thus far, at least, no cause for affront; but, after having examined the motion, which is brief, clear and easy of comprehension, he gave his assent to its becoming a part of the files and in the orderly course of

procedure overruled it. If he had deemed it otherwise than the exercise of a right accorded to counsel under the recognized rules of precedure, he would have refused to permit it to be filed, and if. this had been inadvertently done, he would have ordered it stricken from the files. Familiar, therefore, with all of the facts and circumstances connected with the filing of the motion, the court gave its assent thereto, which it would not have done if the act had been accompanied by an insult of any character. An act which indicates no insult, even to the scrutinizing eye of the court, cannot reasonably be considered subject to censure, much less condign punishment. We must conclude, therefore, not only from the record, the testimony of the witnesses which we have set forth in detail in the statement of facts, and the conduct of the court, that there was neither in the act of counsel nor in the manner in which it was preformed a manifestation of disrespect. We might well conclude here and order the discharge of the petitioners, if the sum of their offending was limited to the alleged improper filing of the application for a change of venue. There are others, however, as we have noted: (1) declining to proceed with the trial and (2) denying the court's jurisdiction. They may be considered together, because, under the facts in this case, they are inseparable. In declining to proceed on account of the court's alleged unfairness, the question of its lack of jurisdiction was necessarily involved and hence not inconsistently asserted. We do not understand, and it is not contended, that either of these acts was committed in a contemptuous maner. If so, there is no evidence to sustain such a contention. The affirmative attitude of counsel, as indicated by Mr. Ewing, when directed to proceed with the trial, was to the contrary. He said, in substance, that he had filed the motion for a change of venue in good faith and with as much earnestness as he had ever filed a paper in court. The charge of contempt, therefore, if sustained by either of these findings must consist in the acts themselves. The only tenable ground upon which this contention can be based is that counsels' conduct interrupted the pro-

ceedings of the court and thus hindered the administration of justice. That a refusal of an officer charged with the control of the prosecution of a State case to proceed with a trial, may or may not, under a proper state of facts, constitute contempt, we are not called upon to determine in this case. Counsel here seeking release were not so charged. Their duty as representatives of the Attorney-General acting under the direction of the Governor was to assist the prosecuting attorney. The statute (Sec. 967, R. S. 1909) in relation thereto is definite in its terms and unmistakable in its meaning. Neither upon their own assumption nor under the orders of the court were counsel authorized to exercise any greater prerogative in the absence of the disqualification of the prosecuting attorney. A condition might, of course, arise due to the incapacity of the latter which would render it necessary for the court to direct assisting counsel to assume control of the trial of a case. No such condition existed here. The record affirmatively declares that the prosecuting attorney had declined, no reason being stated, to participate in this prosecution. No such authority is conferred on this official; and, in the absence of any fact which would have disqualified him, his sworn duty required him to at least participate in, if he did not direct, the proceeding. The statute defining his duties is mandatory. [Sec. 1007, R. S. 1909.] The announcement of the court, therefore, that the prosecuting attorney would not prosecute but that assisting counsel would conduct the proceeding conferred no such unqualified controlling power upon the latter in the disposition of the case as to render their presence alone necessary to the continuance of the prosecution. Construed otherwise the statute would authorize the Governor to override by his direction the will of the people, whether exercised wisely or not, in their selection of an officer to prosecute offenders against the law. The province of this statute is to afford assistance to the prosecuting attorney, and not to usurp his power. Rightly construed, it is a wise provision; given unusual scope, it cannot but prove pernicious in its operation.

When, therefore, counsel declined to proceed, the court, conscious of the duty devolving on the prosecuting attorney, could have called him in and directed him to conduct the trial to a conclusion. There is no merit, therefore, in the claim that the failure or refusal of counsel to proceed with the trial constituted any practical barrier to the court's progress in the discharge of its duties.

Following the declination of counsel to proceed and the refusal of the court to grant them time in which to apply to the Supreme Court for a writ of prohibition, the court declared their conduct to be contemptuous and despite their repeated asseverations that they had filed the motion and declined to proceed, believing their conduct to be authorized under Section 5198, Revised Statutes 1909, they were fined. Upon their refusal to pay same they were ordered committed to jail. An unfortunate incident followed the assessment of the punishment of counsel in the remark of the judge that it would be necessary to satisfy him that the fines were not paid out of the public funds. We refer to this reluctantly, only to say that the remark did not constitute an illuminating illustration of that cool judicial equipoise which should characterize the conduct of a judge assessing punishment against counsel for an infraction of the court's dignity.

III. Holding as we do that the acts of counsel were neither in themselves nor on account of the demeanor which characterized their commission, contemptuous, it is not necessary to determine whether the motion which constituted a challenge to the fairness of the court was authorized under that subdivision of Section 5198, Revised statutes 1909, which provides that a judge shall be incompetent to hear and try a case when in anywise interested or prejudiced. The origin and history of this section has been chronologically presented in the briefs, where it may be readily examined, and it is, therefore, unnecessary to set it out

*Section 5198.*

herein. It will be time enough to construe the statute when confronted with that duty.

IV. Whatever may be said in the above behalf, however, since it does not constitute a ruling necessary to the determination of the case, may properly be regarded as the personal observations of the writer.

The application of the statute other than when invoked by a defendant, although that seems to have been its usual construction, is not unreasonable. A condition of the public mind may exist in a locality which would impel a public prosecutor, in an honest effort to discharge his duty, to at least call the trial judge's attention to circumstances indicating that he had, although without corrupt intent, prejudged the case and that it should be tried by another. This would involve no question of personal integrity, afford at least a fair opportunity for the State to conduct the prosecution free from any possible ulterior influence, and in no wise interfere with any right accorded to the defendant. Let us suppose, although the illustration may be remote, a condition of the public mind where the doctrine of *meum* and *tuum,* so far as it applies to the sacredness of public property, has come to be lightly regarded, and while a proper sensitiveness as to the rights of private individuals may prevail, as to the rights of the public, "the good old rule sufficeth them, the simple plan, that they should take who have the power and they should keep who can." Where this standard of right prevails its influence may possibly extend to a greater or less degree to the instrumentalities employed in the administration of justice. Judges themselves, although unconscious of same, may be subject to this influence. Where it exists justice cannot be fairly administered by those subject thereto. The remedy is simple. Upon the suggestion of prejudice being made under Section 5198, the judge, prompted by that sense of delicacy and duty which renders him averse to judicial action upon an intimation of his interest in the matter at issue, will retire and call in another to try the case. Section 5201, Re-

vised Statutes 1909, reasonably construed, will author-
ize this course. Such a course would indicate a high
sense of official duty, as well as a dispassionate pur-
pose on the part of the judge, to free the case from even
an intimation that he could not fairly conduct it.

The reasoning of this court in awarding a writ of
prohibition against a circuit judge in State ex rel. v.
Wear, 129 Mo. 619, gives favorable color to the correct-
ness of the foregoing conclusion. While the facts in that
case are somewhat different from those in the case at
bar, the construction given to Section 5198 (then Sec-
tion 4174) is strongly persuasive of what constitutes a
proper application of that section. In the Wear case
the ground of disqualification which the judge himself
had recognized, was relationship to the accused. The
judge, recognizing this relationship and its consequent
disqualifying effect, had called in a judge from an ad-
joining circuit, but when he appeared to try the case
Judge Wear refused to surrender the court room to him
or otherwise permit him to proceed. Thereupon the
prosecuting attorney of the county where the case was
pending applied for and was granted a writ of prohi-
bition. This court in granting the writ cited the Consti-
tution (Sec. 29, Art. 6), which provides in the event of
a vacancy in the office of a judge or his inability for
any cause to hold a term or part of a term, the same
may be held by a judge of any other circuit; and at
the request of a judge of any circuit, any term or part
of a term, in the circuit of the judge unable to hold the
court, may be held by the judge of any other circuit.
The Legislature is authorized to make such provisions
for the holding of court as is found necessary.

"In obedience to this command of the Constitution"
says the court, "the Legislature enacted Section 4174,
Revised Statutes 1889." The section is then set forth
in full and is identical in its terms with what is now
Section 5198. As a method to render this section oper-
ative, Section 4178, Revised Statutes 1889 (now Sec-
tion 5201), was enacted which provides how and under
what circumstances, when the incompetency of a judge

is alleged, another may be called in. In discussing these constitutional and statutory provisions the court said: "It is plain that Judge Wear by his relation to his son, the defendant, was disqualified, and knowing this, it was his imperative duty to either order the election of a special judge or to call in the judge of another circuit to sit in the trial of the said indictment." As a logical conclusion flowing from this reasoning it would seem that the duty of the judge, whose right to sit was challenged, would be equally imperative, regardless of the ground of disqualification urged if within the terms of the statute.

For the reasons stated, we are of the opinion that the judgment against the petitioners should be set aside and that they should be discharged. It is so ordered.

*Faris, J.,* concurs; *Williams, J.* concurs in paragraphs 1, 2, 3 and the result, but expresses no opinion as to matter discussed in paragraph 4.