E. G. LIMERICK, Respondent, v. MORRIS RIBACK, et al., Appellants.

Kansas City Court of Appeals, June 26, 1920.

1. **CONTEMPT OF COURT:** Criminal Proceeding: Imposition of Fine as Punishment. An information filed by a plaintiff who had secured a decree enjoining the defendant from operating a rendering plant in an unsanitary method, alleging a violation of the injunction *held* to be a proceeding for a criminal contempt, and not a civil one, and hence the imposition of a fine by way of punishment was proper.

2. ————: Power of Court to Punish. The right of a court of record to punish for criminal contempt is not limited to punishment

204 M. A.—21

for causes enumerated in section 3881, Revised Statutes 1909, but such courts have power to punish for causes known at common law other than those named in the statute.

Appeal from Boone Circuit Court.—*Hon. David H. Harris,* Judge.

AFFIRMED.

*E. C. Anderson* for respondent.

*McBaine, Clark & Rollins* for appellants.

BLAND, J.—Defendants were each fined the sum of $1 for contempt of the lower court and they have appealed.

The contempt proceedings grew out of the following circumstances: Early in the year 1919 plaintiff brought an action—against defendants in equity, charging that he was the owner of a farm in Boone County, Missouri, and that defendants operated a rendering plant on six acres of ground adjoining said farm in which carcasses of horses, cattle and hogs were rendered; that said plant was discharging foul smelling gases and odors; that the plant constituted a nuisance and depreciated the value of plaintiff's land and made the habitation of it by himself and family undesirable. Plaintiff asked that defendants be restrained from operating their plant and from continuing to pollute the atmosphere. Trial was held and the judge of the circuit court of Boone County, on May 15, 1919, entered a decree finding that at the time of the filing of plaintiff's petition the plant had been operated by the defendants so that foul and obnoxious odors arose and emanated therefrom and at times were blown or carried over and across plaintiff's land and premises and the site of his dwelling house to the great discomfort of himself and his family. The court further found that since the institution of the suit the defendants had remedied and bettered the conditions and surroundings

of their plant and had installed other and additional machinery and fixtures of the latest and most approved design, and had been operating and conducting their plant in a more cleanly and sanitary manner. The court further found that defendants were operating their plant in such a way as not to constitute it a common or public nuisance and that the plant was a legitimate and proper business enterprise and of benefit to the citizens of the county generally, and if carefully and properly maintained it ought not to be a common or public nuisance, and that the defendants should not, without other and further reasons than those in evidence before the court, be permanently enjoined or restrained from the operation and maintenance of the same. The court thereupon enjoined the defendants—

". . . from conducting, operating and maintaining their said rendering plant in a careless, negligent and unsanitary manner and from depositing or leaving the carcasses of dead animals or parts thereof on the open ground or premises surrounding their said rendering plant, and from pouring or conducting the floor scourings or other water or liquid containing blood or other parts or elements of dead animals upon the ground surrounding said rendering plant or into any open drain situated upon or leading therefrom."

On October 7, 1919, plaintiff filed an information in said court informing the court that defendants since the injunction decree had—"carelessly and in an unsanitary manner left parts of the carcasses of dead animals and parts of dead enimals upon the ground and premises surrounding their said plant so that dogs or other animals have carried them upon the premises of the said plaintiff and other persons owning lands adjacent or near the premises of said defendants; that defendants have and are still rendering the carcasses of dead animals in open kettles outside any buildings and in the open air so that foul, obnoxious odors, stenches and unsanitary and impure air arise, emanate and escape therefrom," and further stating that the

foul and obnoxious odors and stenches were much more offensive and obnoxious than at any time since the erection and operation of defendants' plant.

The trial resulted in a finding by the court that defendants had not been guilty of operating their plant in a negligent and insanitary manner but sustained plaintiff's allegations that parts of dead animals were left upon the ground through the negligence of defendants' agents and employees. The court found defendants guilty of a violation of the injunction by repeatedly leaving parts of dead animals on the ground surrounding the plant, assessed the costs and a fine of $1 each against the defendants for the benefit of the school fund, and ordered that they be committed to jail until such fine and costs be paid.

Defendants urge that the contempt proceeding was one for a civil and not a criminal contempt and that the imposition of a fine by way of criminal punishment was void. We do not regard the proceeding as one for civil contempt. The distinction between the two was fully pointed out in the case of Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 442, 443, where the court said—

"But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order.

For example: If a defendant should refuse to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance required by a decree for specific performance, he could be committed until he complied with the order. Unless there were special elements of contumacy, the refusal to pay

or to comply with the order is treated as being rather in resistance to the opposite party than in contempt of the court. The order for imprisonment in this class of cases, therefore, is not to vindicate the authority of the law, but is remedial and is intended to coerce the defendant to do the thing required by the order for the benefit of the complainant. If imprisoned, as aptly said in In re Nevitt, 117 Fed. Rep. 451, "he carries the keys of his prison in his own pocket."ᶺ He can end the sentence and discharge himself at any moment by doing what he had previously refused to do.

On the other hand, if the defendant does that which he has been commanded not to do, the disobedience is a thing accomplished. Imprisonment cannot undo or remedy what has been done nor afford any compensation for the pecuniary injury caused by the disobedience. If the sentence is limited to imprisonment for a definite period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense. Such imprisonment operates, not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience."

Defendants admit that the fine imposed in the case at bar was assessed not to compel defendants to do an affirmative act but to punish defendants for a completed act of disobedience, but they insist that as the proceeding was to protect the property rights of a private party it could not be a criminal contempt. It is true that civil contempt proceedings are for the purpose of protecting the property rights of private parties, or for the benefit of the opposing party in a civil action, but it is equally well established that there may be in a civil case to protect private property rights a contempt in a punitive sense to vindicate the supremacy of the law and to punish for a completed act of disobedience. [Fiedler v. Const. Co., 162 Mo. App. 528; Railroad v. Gildersleeve, 165 Mo. App. 370; 13 C. J., pp. 6 and 7.] But it is insisted by defendants that the Gompers case is authority for the proposition that there can be no

criminal contempt growing out of a proceeding to enforce and protect property rights. We do not construe the opinion in that case to so hold. The Gompers case goes no further than to hold that the proceeding in that case as prosecuted was for civil contempt and that in view of that fact there could be no punishment as for criminal contempt.

It is insisted that the case of State ex rel. v. Bland, 189 Mo. 197, is authority for the statement that the proceeding undertaken in the case at bar is one for civil contempt. We do not so construe that case. The question in that case was whether defendant under the statute allowing appeals in civil cases could appeal. The court held that as the contempt proceeding arose out of a civil suit in equity (an injunction suit similar to the one in the case at bar) it involved a civil controversy for it grew out of the same, but that case is not authority for the proposition that the contempt proceeding itself, which was ancillary, was not criminal in its nature. [See Railroad v. Gildersleeve, supra, l. c. 375, 376.] The fact that this proceeding was not instituted in the name of the state does not change its character. It was recognized in the Gompers case, l. c. 446, that the style of the proceeding was not controlling in matters of this kind. It was natural that the style of the case be carried into the contempt proceedings as those proceedings grew out of the original case.

It is insisted that there was no criminal contempt shown. There was ample evidence in the record to sustain the findings of the court. The judgment recites that defendants "had no actual knowledge of the fact that the entrails of dead animals were left upon the ground surrounding their said plant and that the same was not left upon the ground with their actual and personal knowledge or consent." In view of this finding defendants cite us to section 3881, Revised Statutes 1909, which recites—

"Every court of record shall have power to punish as for criminal contempt persons guilty of: First, dis-

orderly, contemptuous or insolent behavior committed during its session, in its immediate view and presence, and directly tending to interrupt its proceeding or to impair the respect due to its authority; second, any breach of the peace, noise or other disturbance directly tending to interrupt its proceedings; third, willful disobedience of any process or order lawfully issued or made by it; fourth, resistance willfully offered by any person to the lawful order or process of the court; fifth, the contumacious and unlawful refusal of any person to be sworn as a witness, or when so sworn, to refuse to answer any legal and proper interrogatory."

It is urged that as the court found there was no intentional disobedience of the injunction that it could not punish defendants as for criminal contempt as the statute only allows such punishment in case of any "willful disobedience of any process or order lawfully issued or made by it." Prior to 1909 (Laws of 1909, p. 392) the statute read that "Every court of record shall have power to punish as for a criminal contempt persons guilty of *any of the following acts and no other,*" etc. The supreme court in the case of State ex inf. v. Shephard, 177 Mo. 205, 234, declared the statute unconstitutional, for the reason that the Legislature had no power to take away, abridge, impair, limit or regulate the powers of courts of record to punish for contempt. The statute was amended (Laws of 1909, p. 392) striking out the words *"any of the following acts and no other"* so as to leave the statute as it is quoted in full, supra. It is apparent that the statute as it now appears does not limit the right of courts of record to punish for criminal contempt, but such courts still have the inherent power to punish contempt for causes known at common law other than those named in the statute. [In re Clark, 208 Mo. 121, 147, 148; Fiedler v. Const. Co., supra, l. c. 537, 538.]

The evidence shows that defendant Riback visited the rendering plant, which was near Columbia, Mo., nearly every day; defendant Greenspon testified that

he was at the plant sometimes once a day and sometimes three or four times a day; defendant Glickman testified that he had charge of the office in Columbia, that he had been at the plant several times since the injunction was issued. There was ample evidence of the condition that the court found present. While the court held that defendants did not personally know of the condition, the evidence shows that defendants were grossly negligent in the premises, and the court was fully justified in finding them guilty of a violation of the injunction.

The judgment will therefore be affirmed. All concur.