MARY M. HUEGEL, Appellant, v. HARRY E. KIMBER, Respondent,— 228 S. W. 2d 833.

Kansas City Court of Appeals. Opinion delivered April 3, 1950.

*R. Carter Tucker, John Murphy, William H. Wilson, J. Gordon Siddens, Tucker, Murphy, Wilson & Siddens,* for appellant.

*John S. Lodwick* and *Francis G. Hale* for respondent.

BROADDUS, J.—This is an appeal from a judgment holding plaintiff guilty of contempt of court for violation of an injunction decree. On August 27, 1947, plaintiff-appellant, by written contract, sold to defendant-respondent, a certain retail stock of merchandise in Excelsior Springs, Missouri. The contract of sale provided that plaintiff would not own, engage in, clerk or work in the same, or similar business in said city within five years from the date thereof.

On February 12, 1948, plaintiff filed in the Circuit Court of Clay County, her petition for cancellation and rescission of said contract and for an accounting by defendant of his alleged profits in handling said business. To this petition, defendant filed an amended answer and cross-petition asking injunctive relief against plaintiff. On September 17, 1948, the court entered its decree dismissing plaintiff's petition and enjoining her for a period of five years from August 27, 1947 from owning, engaging in, clerking and working within the City of Excelsior Springs, in a business similar to that of defendant. Thereafter, plaintiff filed her motion for new trial which was, on the 4th day of October, 1948, by the court overruled, on which date she filed her notice of appeal to the Supreme Court. On November 14, 1949, the Supreme Court handed down its opinion affirming the trial court's order of dismissal and decree of injunction. (See Huegel v. Kimber, 224 S.W. (2nd) 959, where the background of this proceeding is clearly set out.)

After plaintiff had filed her notice of appeal to the Supreme Court, and on October 30, 1948, defendant filed his verified motion for a citation for contempt, supported by three separate affidavits of citizens of Excelsior Springs. In this motion defendant recited that, in defiance of the injunctive decree, "plaintiff, in the City of Excelsior Springs, Missouri, owns, engages in, and clerks and

works in a business establishment selling and offering for sale'' merchandise similar to that of defendant.

On November 1, 1948, plaintiff filed her motion praying for an order staying the issuance of any citation for contempt pending the final determination of the issues in the main case before the Supreme Court. On November 12, 1948, the court overruled plaintiff's motion to stay and on November 17, 1948, ordered the issuance of a citation for contempt and ordered plaintiff to appear before the court and show cause why she should not be adjudged in contempt. On December 21, 1948, a hearing was held before the court and on January 27, 1949, the court entered its judgment adjudging plaintiff guilty of contempt of court, ''and that she be and is hereby, on account of her said contempt fined the sum of $1,000.00, which she is ordered and directed to pay to the clerk of this court, and that in addition to said fine and on account of her said contempt, she is hereby sentenced to the common jail of Clay County, Missouri for the term of two months; that as to the payment of said fine and the service of said jail sentence, said Mary M. Huegel be, and she is hereby given a stay of execution for seven days from and after the date hereof, and that said fine shall be paid and said jail sentence commenced on January 28, 1949; that she pay all costs in this behalf incurred and that execution and commitment be by the clerk issued accordingly.'' Thereafter, plaintiff timely filed her motion for a new trial which was by the court overruled and she perfected her appeal to this court.

Appellant claims that the judgment of contempt is invalid ''because the punishment assessed proceeds as though this were a criminal contempt rather than a civil contempt.'' Our Supreme Court *en Banc*, in a recent opinion written by Judge Tipton, has gone carefully into this question. (Odom v. Langston, 213 S.W. (2nd) 948.) In that case it appears that J. N. Burroughs, an attorney-at-law had brought four successive suits on behalf of certain persons seeking to have the trust provisions in the will of Barsha A. Langston, deceased, declared void. All of these suits were decided adversely to Burroughs' clients and in each case the judgment of the trial court was affirmed by the Supreme Court. In the last case the decree enjoined Burroughs and his clients from prosecuting any other suit concerning the Langston estate and trust. Afterwards said Burroughs instituted another action in the District Court of the United States at Springfield, Missouri, seeking to have adjudged invalid the residuary clause of the Langston will. Thereupon, the representatives of the Langston estate filed a petition in the Supreme Court requesting that a citation be issued to J. N. Burroughs to show cause why he should not be adjudged guilty of contempt of that court. The citation was issued as prayed. The Supreme Court held that the filing of the suit in the District Court of the United States was a

clear violation of the injunction but that, "the violation of this injunction made J. N. Burroughs guilty of civil contempt but not of criminal contempt." The opinion says:

"Criminal contempt is where a person is prosecuted to preserve the power and vindicate the dignity of the court and to punish him for disobedience of its orders. Criminal contempt is punitive in its nature, and the state, the courts, and the people are interested in the prosecution. Civil contempt is remedial and coercive in nature, and the parties chiefly interested in the conduct and prosecution are the individuals whose private rights and remedies the contempt proceedings are instituted to protect or enforce." (L.C. 950. 951.)

Then after quoting from various authorities, the court uses this language:

"This contempt action was instituted by the relators-respondents to preserve a private right they had obtained in the cross-petition in the original action, namely, to prevent appellants and their attorneys from harassing relators-respondents with another action in regard to the Langston estate and trust. It was not brought as an independent action but is a proceeding for the enforcement of the court decree and is auxiliary to the main case. There can be no doubt that this is civil contempt.

'A proceeding for civil contempt has as its object remedial punishment "by way of a coercive imprisonment, or a compensatory fine, payable to the complainant." ' City of Campbell, Mo. et al. v. Arkansas-Missouri Power Co., 8 Cir., 65 F. 2d 425, loc. cit. 427.

'Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order. * * * If imprisoned, as aptly said in Re Nevitt, 117 F. (448) 451, "he carries the keys to his prison in his own pocket." He can end the sentence and discharge himself at any moment by doing what he had previously refused to do,' Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 442, 443, 31 S. Ct. 492, 498, 58 L. Ed. 797, 34 L.R.A., N.S., 874. We cited the above quotation with approval in the case of McNealey v. Rouse, Sheriff, Mo., 264 S.W. 383."

Defendant in his brief in answer to plaintiff's claim that the judgment of contempt is invalid because the punishment assessed proceeds as though the case involved criminal contempt rather than civil contempt, says:

"It will be noted that the injunction did not require the performance by plaintiff of an affirmative act but was prohibitory in its nature. If it were a mandatory injunction, the contemner is properly punished by imprisonment in jail to coerce performance of the act required by the injunction. In such case, the imprisonment properly

continues only until the contemner purges himself of contempt by performing the mandatory act required by the injunction.

"But that is not this case. Here the plaintiff was prohibited by the decree from violating the terms of her contract of sale and the law is that in such case the contempt is, in effect, *criminal contempt*, and punished as such for a completed act." (Italics ours.)

This is not correct. The case of Merchants' Stock and Grain Co., v. Board of Trade, 187 Fed. 398, is quoted with approval by our Supreme Court in the Odom case, supra. There it is stated, l.c. 399: "Counsel * * * argue that this is a judgment for a criminal contempt * * * because the true line of demarcation between civil contempts and criminal contempts in their opinion was drawn by the Supreme Court of South Dakota in State v. Knight, 3 S.D. 509, 514, 54 N.W. 412, 413, 44 Am. St. Rep. 809, and the contempt here in question falls on the criminal side of that line. That court said:

'If the contempt consists in the refusal of a party to do something which he is ordered to do for the benefit or advantage of the opposite party, the process is civil, and he stands committed until he complies with the order. * * * If, on the other hand, the contempt consists in the doing of a forbidden act, injurious to the opposite party, the proceeding is criminal, and conviction is followed by fine or imprisonment, or both; and this is by way of punishment. * * * This rule, as definitely stated, has not been expressly recognized by any case coming under our observation, but it is consistent with all the decisions.'

"The opinion from which these quotations are made was written in the year 1893. While the line of demarcation there drawn may not have been inconsistent with any opinions coming under the eyes of the Supreme Court of South Dakota at that time, *it is inconsistent with the later decisions of the Supreme Court of the United States.*" (Italics ours.)

The case of Gompers v. Buck's Stove & Range Co., 221 U.S. 418, which is also quoted with approval by our Supreme Court in the Odom case, supra, is probably the leading case on the subject in the books. It was written by Justice Lamar. In that case Samuel Gompers, John Mitchell and Frank Morrison were found guilty of contempt by the lower court in violating the terms of an injunction and sentenced to jail. Gompers for a period of twelve months, Mitchell for nine months and Morrison for six months. In reversing the judgment the court uses this language:

"In this case the alleged contempt did not consist in the defendants' refusing to do any affirmative act required, *but rather in doing that which had been prohibited.* The only possible remedial relief for such disobedience would have been to impose a fine for the use of complainant, measured in some degree by the pecuniary

injury caused by the act of disobedience. Rapalje, Contempts pars. 131-134; Wells F. & Co. v. Oregon R. & Nav. Co. 9 Sawy. 601, 19 Fed. 20; Re North Bloomfield Gravel Min. Co. 11 Sawy. 590, 27 Fed. 795; Sabin v. Fogarty, 70 Fed. 483.

"But when the court found that the defendants *had done what the injunction prohibited,* and thereupon sentenced them to jail for fixed terms of six, nine, and twelve months, no relief whatever was granted to the complainant, and the Buck's Stove & Range Company took nothing by that decree.

"If, then, as the court of appeals correctly held, the sentence was wholly punitive, it could have been properly imposed only in a proceeding instituted and tried as for criminal contempt." (Italics ours.)

In view of the fact that our Supreme Court in the Odom case, supra, relied largely upon decisions of the federal courts, we refer to a recent one which reviews many of the authorities, that of Parker v. United States, 153 F. (2nd) 66. At l.c. it says:

"Proceedings in civil contempt are between the original parties and are instituted and tried as a part of the main cause. Though such proceedings are 'nominally those of contempt,' (Worden v. Searls, 1887, 121 U.S. 14, 26, 7 S. Ct. 814; 820, 30 L. Ed. 853), the real purpose of the court order is purely remedial—to coerce obedience to a decree passed in complainant's favor, or to compensate complainant for loss caused by respondent's disobedience of such a decree. *If imprisonment is imposed in civil contempt proceedings, it cannot be for a definite term.*"

Applying the law as declared by our Supreme Court to the situation here plaintiff, if guilty at all, was only guilty of civil contempt. As in the Odom case, supra, this contempt proceeding was instituted by defendant to preserve a private right he had obtained in his cross-petition in the main case. Yet the punishment meted out to plaintiff was not remedial or coercive in its nature, but entirely punitive, and, therefore, unauthorized. Under the sentence imposed it was impossible for plaintiff to purge herself of contempt. The fine assessed was not for the benefit of defendant, nor was it measured, in any degree, by any pecuniary injury done to him.

The decision of this court in Limerick v. Riback, 204 Mo. App. 321, 224 S.W. 45, is not in accord with the holding of our Supreme Court in the Odom case, supra, and thus has been, in effect, overruled.

The judgment should be reversed. It is so ordered. All concur.