**Ex parte James L. McMULLIN, Petitioner,**

v.

**Harold D. SULGROVE, Sheriff of Audrain County, Respondent.**

**No. 55471.**

Supreme Court of Missouri, En Banc.

Nov. 9, 1970.

J. Arnot Hill, Kansas City, for petitioner.

Thomas I. Osborne, Osborne & Heim, Mexico, for respondent.

MORGAN, Judge.

Petitioner in habeas corpus, James L. McMullin, was adjudged guilty of criminal contempt in the Circuit Court of Audrain County, fined $250 plus costs, and until satisfaction thereof was committed to jail.

The chronology of events, with the date of each incident, upon which the adjudication was premised, may be outlined as follows:

1. November 3, 1969—Petitioner, a duly licensed attorney with offices in Kansas City, entered his appearance as counsel for defendant in a cause entitled State v. McCroskey, then pending in Audrain County. From the record, it appears that petitioner was advised by Judge George Adams the case would be for jury trial during the week of December 15, but the specific date and time were determined later by the court after consideration had been given to all cases then ready for trial.

2. November 6, 1969—Circuit Clerk mailed copy of docket to petitioner wherein it was indicated that the McCroskey case was No. 1 for trial on Thursday, December 18. Presumably the docket was received by petitioner.

3. November 21, 1969—Petitioner was appointed by Judge James A. Moore of the 16th Judicial Circuit (Kansas City), to represent the defendant in a case entitled State v. Lane, wherein defendant was accused of killing a policeman and the state was seeking the death penalty.

4. December 3, 1969—The Lane case was assigned to the Criminal Division for trial.

5. December 15, 1969—Trial of the Lane case began before Judge Henry Riederer. At 9:00 A.M., petitioner tried to call the prosecuting attorney of Audrain County but could only reach his secretary. Petitioner explained his dilemma with the doubt he could appear for trial in Audrain County on December 18; he requested this message be communicated to Judge Adams, and if there were questions to request the prosecuting attorney to call him back collect. The prosecuting attorney, in oral argument before this court, admitted receipt of the message but did not recall the request to call back collect. In any event, he conveyed the message to Judge Adams.

6. December 18, 1969—Prospective jurors for the trial of the McCroskey case were present in Audrain County and the prosecuting attorney announced ready for trial. The record does not reflect what disposition was made of the case of State v. Wright which, as shown by the docket, was also set for trial in Audrain County on December 18. Either the prosecuting attorney or Judge Adams called Judge Riederer and were advised petitioner was actively engaged in the Lane trial, which was finally concluded by a jury verdict returned after 6:00 P.M. on Saturday, December 20.

7. December 23—An application for an order to show cause why petitioner should not be found to have committed the offense of criminal contempt of the Circuit Court of Audrain County was filed. It, in part, alleged that petitioner "willfully failed and refused to appear for trial," and that he had not, prior thereto, "filed any application for a continuance of said cause, nor had he otherwise given any legally sufficient notice to the court that he would not or could not appear for trial as scheduled * * *."

January 5, 1970—Petitioner waived formal notice and an evidentiary hearing was had before Judge Adams. The following

résumé of the testimony given is sufficient for consideration of the appeal.

By Petitioner:

"The case (Lane's in Kansas City) had been previously set prior to the time of this case (McCroskey's in Audrain County). There had been an attorney, Mr. June Hill, and the Court had relieved him and he appointed me and this case was set for trial in Kansas City, a week before the week of the 18th.

\* \* \* \* \* \*

"On Monday, I wasn't sure whether we could get a continuance then or not—when we got there we saw that they could not because the case had been set for sometime. I then called the Prosecuting Attorney's office \* \* \*

\* \* \* \* \* \*

"I called the Prosecuting Attorney's office at 9:00 o'clock on the Monday before the 18th, telling him at that time that I was in actual trial of a death case, and I asked, since I couldn't get hold of the Prosecutor, gave them my number, my name, and asked that since I was 150 some miles away would they please communicate with the Court \* \* \*

\* \* \* \* \* \*

" \* \* \* and if it was not satisfactory with the Court, if they would call me back (collect) and then we went to trial at 9:00 o'clock. We went from 9:00 until 6:00 every day, Monday through the following Saturday—the jury came in with a verdict about 6:00 o'clock on the following Saturday (December 20)."

In answer to the question, by the prosecuting attorney, why he did not call Judge Adams, petitioner answered:

"I assumed, Sir, that by a call to you, that you were handling the case, that you might have the courtesy to return my call collect as I would have done, but I was in error on that \* \* \*."

Petitioner further testified:

"I have nothing but the highest regard for this court, but I could not leave a jury there with the witnesses subpoenaed and the Judge and the Prosecutor insisting upon trial to come down.

\* \* \* \* \* \*

" \* \* \* I did not intentionally and wilfully stay away from here, Sir—I was actually in trial."

The prosecuting attorney testified that he received the telephone message and "I forwarded that note on to the Court \* \*."

In summary (by way of a closing statement) he added:

"All I had was a telephone call—I did not then feel an obligation to run him down when he was in trial, act as his attorney to get a continuance for him. I don't treat Mr. McMullin any differently than I would treat the lawyers here locally."

Petitioner closed with the following statement:

"All I've got to say is the fact that I did notify him at 9:00 o'clock on Monday before, just as soon as I knew that we were going on that case that had been set, and as I indicated, I went from 8:00 until 6:00 and one night [day] from 8:00 to 8:00, and I'm sure Judge Riederer would verify it. And we finally ended up on Saturday on this case for which I was appointed by the Court—not a client of my own choosing—I was trying my best, Sir, to do my duty to the Court and the defendant there.

Granted, I should have some way or other stopped that trial and come down here and filed a formal motion, Sir, I did not have the opportunity to do so, and I regret it, and I apologize to the Court and to the State for it. Perhaps I should have not only called the Prosecutor's office but I should have made an effort during a couple of recesses to get the Court but I assumed, Sir, a call to the Prosecuting Attorney's office telling him

where I was, I even left the division I was in and the telephone number of the division and how long I would be there and asked if it was not agreeable with anyone, would they please be kind enough to call my office. I was in error for relying on that—but as far as wilfully showing contempt for this court as it says, Sir, I'm just not guilty of it, Sir."

February 24, 1970—The trial court entered judgment that petitioner was guilty of criminal contempt, because:

" * * * the said McMullin never made any formal or informal application for a continuance, nor did he in any manner notify the Court that he would not be present for trial on the said 18th day of December * * * That said McMullin has failed to show any sufficient reason or cause why he did not attempt to procure a continuance of said cause and advise the court of any alleged inability to be present on said date of trial. * * That said McMullin's failure to advise the court prior to said date of trial that he was unable to be present was willful and constituted an harassment and an interference with and delay of the court in the orderly administration of justice in the case on trial."

After considering costs expended in calling prospective jurors and witnesses in the amount of $247.62, the fine of $250 was assessed.

Initially, it would not be inappropriate to make the passing comment that we approach our immediate task with some regret. Any conflict between members of the judiciary and attorneys, as officers of the court, only adds to the burden of the legal profession in its continuing effort to resolve the innumerable conflicts created by others. Although, there are, unfortunately, sufficient precedents to guide us in disposing of the instant case, those of the legal profession may take pride that such cases are very limited in number.

There can be no argument but that the judicial system can not function unless the participants therein, be they judge or attorney, dedicate themselves to acceptance of those rules demanded by the system itself. "That an attorney's failure to attend court at the time appointed when he has a duty or obligation to be present may amount to, and be punishable as, contempt is crystal clear. In none of the cases decided by American courts and falling within the scope of this annotation has any court so much as intimated a contrary view." Annotation, "Attorney's failure to attend court, or tardiness, as contempt," 97 A.L.R.2d 431, 438. However, universal acceptance of the rule does not make it so axiomatic as to preclude any exceptions thereto. "The absence of an attorney, a juryman, a witness, an officer (including even a member of the bench himself), from the courtroom at the precise time due there may be susceptible of many innocent explanations." Ex Parte Clark, 208 Mo. 121, 106 S.W. 990, 997. Whether or not petitioner's explanation for his absence was legally sufficient is the sole and only question to be resolved in this case. The inherent power of a court to punish for contemptuous harassment of its functions, the procedure to follow in determining if the alleged conduct was contemptuous, as well as the punishment therefor, and the rights of those accused of disrupting the orderly administration of justice by such harassment have all been fully considered by the appellate courts of this state. Ex Parte Clark, 208 Mo. 121, 106 S.W. 990; Ex Parte Howell, 273 Mo. 96, 200 S.W. 65; Osborne v. Purdome, Mo., 250 S.W.2d 159; Curtis v. Tozer, Mo.App., 374 S.W.2d 557. Missouri Digest, Contempt, Vol. 7A.

We must start from the premise that "contempt like a crime must be measured by the intent with which it is committed." Ex Parte Howell, 273 Mo. 96, 200 S.W. 65, 70.

■ Petitioner, as employed counsel, entered his appearance in the McCroskey case in Audrain County. In so doing, he became obligated, both legally and professionally, to comply with further directives of the

court. On November 3, there was nothing to indicate petitioner had any thought of doing otherwise. Some eighteen days later, on November 21, he was appointed to give his time and professional skill for the defense in the Lane case in Kansas City without compensation. We reject any thought that acceptance of this obligation was for the purpose of delaying trial of the McCroskey case. To do otherwise would be an insult to the ingenuity and intelligence of any licensed attorney. Acceptance of such appointments without compensation, although perhaps unappreciated by others, has long been one of the profession's great contributions to society. We need not comment, at this time, as to whether that burden can be carried much longer. Nevertheless, on November 21 petitioner properly accepted the appointment. Although petitioner hoped for a continuance of the Lane case, it had been delayed several terms and the court insisted on trial. Unused strategy might have called for advising Judge Riederer on Monday, December 15, that petitioner was obligated to be in Audrain County on Thursday, December 18. Petitioner apparently determined such a suggestion would be to no avail, and it would be rather speculative now to guess what the reaction of the court might have been. Any active attorney would not consider it a novel experience to be obligated to appear in different cases in different courts at the same time. Faced with such conflicting duties, we consider what petitioner did. First, he did not ignore his scheduled appearance in Audrain County. Had he done so, precedents perhaps would have dictated the result. Second, he did call to advise opposing counsel of his apparent inability to appear on December 18. It is unimportant that the message was to a secretary, for it is admitted that the prosecuting attorney was advised and the message was relayed to the court. This was on Monday before the scheduled trial on Thursday. Trying to evaluate the significance of receipt of the message is made more difficult by the following portion of the record. While peti-

tioner was testifying, the court asked: "Well, you didn't show this court the courtesy of even asking this court to excuse you which this court would very gladly have done—." Petitioner answered: "I'm sure you would have, Sir." The inquiry indicates that the trial court would have avoided the conflicting dates if the petitioner had (1) called the judge directly, or perhaps, (2) filed a written application for continuance. Calling the judge directly would not have been considered improper, but with the multitude of cases pending in the many courts, recognition must be given to the fact that in practice opposing counsel accept the task of solving most conflicting dates. Refusal of the Bar to make such an effort, or the courts to recognize it as a normal practice, would add greatly to the burdens of the judiciary. The fact opposing counsel in the instant case did not join in petitioner's effort is not of immediate concern, but the fact petitioner tried is of utmost importance. Was his action contemptuous of the court by not calling directly? We must conclude that it was not, and petitioner's misplaced confidence in opposing counsel does not make it so. Next, should petitioner have filed a written request for continuance? If it be assumed that such a request would have been honored, the obvious answer is yes.

■ His alleged ignorance of a local court rule that an application for continuance was to be in writing is unimportant, for the reason the rule is consistent with Supreme Court Rule 25.08 allowing a continuance for "good cause." Furthermore, the rule "contemplates a written application showing good cause for a continuance." State v. Boykins, Mo., 399 S.W.2d 70, 73.

Admittedly, petitioner made no effort to file a written request when, by failure to receive a response, he considered the conflict resolved by the phone call. The Lane trial recessed after six o'clock on Monday and it might be argued that petitioner could have prepared the written application later that night. Whether it would have been received in Audrain County in time to have

388

avoided the expense on which the fine was based is unknown. However, this review is not for the purpose of speculating as to possibilities, but to determine if petitioner did intentionally manifest disdain and disrespect for the court. The record does not show him to have been so disposed. To suggest that there might have been a better course to have taken does not make that selected contemptuous.

Although unimportant in the instant case for the reason punishment was not assessed summarily but only after an evidentiary hearing, in consideration of the arguments presented wherein the parties disagree as to whether petitioner was convicted of direct or indirect criminal contempt, we mention that "failure to appear" has been classified by this court as being "indirect." Clark, supra, 106 S.W. loc. cit. 998.

 In further recognition of arguments of counsel, we note the challenge to the court's finding that it had not been notified "formally" or "informally" of the problem, and the failure to find petitioner's conduct contemptuous "beyond a reasonable doubt." Osborne v. Purdome, Mo., 250 S.W.2d 159, 163. However, we base our ruling on the fact a court should not, and can not in a jurisdictional sense, punish for contempt when it is manifest no contempt of its authority was intended.

In accordance with the views expressed, the petitioner should be discharged. It is so ordered.

HENLEY, C. J., FINCH, DONNELLY and SEILER, JJ., and HOGAN, Special Judge, concur.

HOLMAN, J., dissents in separate dissenting opinion filed.

BARDGETT, J., not participating because not a member of the Court when cause was submitted.

HOLMAN, Judge (dissenting).

I respectfully dissent. It is my view that in order for petitioner to be free of guilt of contempt he should have, at the least, advised Judge Riederer, prior to the commencement of the trial in Kansas City, of the prior setting of the case in Audrain County and to have sought a continuance for that reason. Absent any effort in that regard, I think the actions taken by petitioner were not sufficient to absolve him of guilt for contempt under the circumstances. I would therefore quash the writ and remand petitioner to the custody of the sheriff of Audrain County.