CHEMICAL FIREPROOFING CORPORA-
TION, an Ohio Corporation d/b/a Acme
Cleaning Service Division, Plaintiff-Re-
spondent,

v.

Herbert B. BRONSKA and Engineered
Cleaning Services, Inc., a Missouri Cor-
poration, Defendants-Appellants.

No. 38008.

Missouri Court of Appeals,
St. Louis District,
Division Two.

June 21, 1977.

Friedman & Fredericks, Melvin Friedman, Stuart J. Radloff, St. Louis, for defendants-appellants.

Cook, Murphy, Lance & Mayer, D. Jeff Lance, Daniel J. Murphy, St. Louis, for plaintiff-respondent.

McMILLIAN, Presiding Judge.

Appellants, Herbert Bronska and Engineered Cleaning Services, Inc., a corporation, hereinafter referred to as Bronska and ECS, respectively, appeal from an order of the circuit court of St. Louis County, Missouri, finding both guilty of criminal contempt and fining each of them $1,000.00. For reasons hereinafter given, we affirm.

This case has had a checkered existence, being punctuated at frequent intervals by motions to show cause as to why the appellants herein should not be punished for contempt for their willful violation of a court ordered injunction. The original litigation grew out of an employment relationship formerly existing between Chemical Fireproofing Corporation (CFC) and Bronska. For more details pertaining to the initial suit the reader is referred to *Chemical Fireproofing Corporation v. Bronska,* 542 S.W.2d 74 (Mo.App.1976). For our purposes here it suffices to say that our court sustained the judgment of the trial court entered 18 April 1975, enjoining Bronska and ECS, for a period of one year, from engaging in a business similar to CFC in the State

of Missouri and Illinois, and, for a period of two years, from soliciting or dealing with persons, firms, or corporations in the states of Missouri and Illinois, which had been customers of CFC prior to 29 June 1974.

On 3 July 1975, the court, in response to a petition for an order to show cause, filed by CFC on 25 June 1975, held defendants in civil contempt for the violation of its 18 April 1975 injunctive order. In support of its finding that defendants were in civil contempt, the court found that after its 18 April 1975 order, defendants continued to engage in a business similar to that of CFC. From the record it appears that this matter is yet pending because no penalties have been assessed.

On 31 July 1975, CFC filed another petition seeking an order to show cause why defendants should not be held in both civil and criminal contempt for alleged violation of the injunctive order by acts occurring subsequent to the 3 July 1975 order based upon the 25 June 1975 petition. No disposition appears to have been made of the 31 July 1975 petition.

On 5 August 1975, the returned date for the 31 July 1975 petition, CFC filed a second petition (amended??) for an order to show cause seeking civil and criminal penalties for defendants' alleged violation of the 18 April 1975 injunction that occurred subsequent to the 3 July 1975 finding of the trial court that defendants were guilty of contempt. CFC's petition alleged that defendants' acts of selling services to General Motors Assembly Division, Warwick Hotel, Schnucks Markets, Barnes Hospital and Host International, all of whom were customers of CFC prior to 29 June 1974, were direct, willful and deliberate, and constituted an offense against the majesty of the law and the dignity and authority of the court.

After a 25 August 1975 hearing on the petition, the trial court found beyond a reasonable doubt that defendants not only violated the 18 April 1975 injunctive order but also found that defendants were guilty of willful disobedience of the court's order and that their acts and conduct constituted

offenses against the majesty of the law and the dignity and authority of the court. Accordingly, the court found both Bronska and ECS guilty of criminal contempt and sentenced Bronska to ten (10) days in the custody of the warden of the St. Louis County jail and fined Bronska and ECS the sum of $3,000.00. After a conference with defendants' attorney, the court cancelled its original sentence of Bronska and thereafter suspended the imposition of sentence and placed Bronska on probation until 29 June 1975. The court left open the matter pertaining to civil contempt which was yet pending before the Honorable Harry J. Stussie (3 July 1975).

On November 7, 1975, CFC filed a notice of revocation of probation and sentencing, allegedly based upon infractions of the injunctive order and probation occurring after 25 August 1975. On 24 November 1975, after a hearing the court found both Bronska and ECS to be in violation of their probation, and accordingly sentenced Bronska to serve two days in the custody of the St. Louis County Welfare Department and imposed a $3,000 fine upon each defendant. On 12 December 1975, the court filed its findings of fact and amended the 24 Nov. 1975 order reducing the fines against each defendant to $1,000 and permitting them both to be on probation until 29 June 1976.

For reversal defendants argue that the trial court erred because: (1) the parent litigation out of which the contempt order arose was pending on appeal; (2) their conduct does not support a finding of criminal contempt; (3) the conviction of criminal contempt was improper, the fixed fine was erroneous, and (4) the injunction was too vague.

■ The appellants claim that they were improperly cited for contempt for failure to comply with an order when the litigation out of which the order grew is still pending on appeal. However, the general rule is: "An injunction which is strictly prohibitory in character is not stayed or superseded by an appeal from the order granting the injunction" 93 A.L.R. 709, 710, while "all proceedings on a mandatory injunction are

stayed by an appeal from the order granting the injunction." *Id.* at 715.

■ The injunction in this case is a prohibitory injunction because it has the effect of preserving the status quo and operates to restrain the commission or continuance of an act. 28 Am.Jur., Injunction, § 18, p. 508. Therefore the filing of the supersedeas bond in this case did not, of itself, stay the injunction order pending appeal, and relators, unless excused under the circumstances, rendered themselves subject to contempt proceedings for the admitted violation of respondents' order. *State ex rel. Jarboe v. Holt,* 444 S.W.2d 857, 858–59 (Mo. banc 1969); *State ex rel. Anheuser-Busch Brewing Ass'n v. Dillon,* 96 Mo. 56, 8 S.W. 781, 783 (1888).

■ The power of a court to hold a person in contempt is essential to prevent its orders from becoming merely advisory for "[i]f parties make themselves the judge of the validity of the court order regularly entered respecting their conduct or course of action, then the courts become impotent and judicial power becomes a mockery." *State v. Koon,* 356 Mo. 284, 201 S.W.2d 446, 455 (banc 1947); *Bessette v. W. B. Conkey Co.,* 194 U.S. 324, 327, 24 S.Ct. 665, 666, 48 L.Ed. 997 (1904). A court may order a party to be held in civil or criminal contempt of its orders. Although it is oftentimes difficult to tell which order of contempt is appropriate, the difference is crucial. Additional procedural safeguards are required in criminal contempt proceedings [1] and there are different consequences for the contemnor. The occasions in which a civil contemnor may be imprisoned are far more limited than those in which the criminal contemnor may be imprisoned, and there are restrictions on the fines to the civil contemnor which do not apply to those levied against the criminal contemnor.

Review of contempt theories—Before we can more fully explore the different consequences of the two contempt convictions, it is necessary to discuss the different purposes of these proceedings. The Supreme Court of this state recently did this in *Teefey v. Teefey,* 533 S.W.2d 563, 566 (Mo. banc 1976).

■ In this well-considered opinion the court stressed that an order of civil contempt is to protect the party to the litigation in whose behalf the judgment has been rendered. "Its function is to provide a coercive means to compel the other party to the litigation to comply with the relief granted to his adversary." *Id.* at 566. Because the purpose of the civil contempt is to force the contemnor to comply with the judgment which has been rendered, the "civil contemnor has at all times the power to terminate his punishment by compliance with the order of the court." *Id.* As will become apparent, it is for this reason that the civil contemnor can be imprisoned only for a violation of mandatory, as opposed to a prohibitory, injunction. A mandatory injunction requires a person to affirmatively act, 43 C.J.S. Injunctions § 5 (1972), while a prohibitory injunction restrains the commission or continuance of an act. *Id.* at § 4. For example, the injunction in this case is a prohibitory injunction since it restrains the defendants from competing with CFC.

If a civil contemnor violates a mandatory injunction which orders him to perform a certain act, and is thereafter imprisoned, he has the power to terminate his punishment by simply performing the act. In this sense he has the keys to the jail in his pocket. If a civil contemnor however, is imprisoned for violating a prohibitory injunction, which ordered him to refrain from the activity he has just performed, the imprisonment is not coercive but punitive since it is chastening him for acts already committed. In this situation the contemnor is not able to voluntarily terminate his imprisonment by per-

---

1. In a criminal contempt proceeding the defendant must be advised of the charges against him, have reasonable opportunity to meet them by way of defense, is entitled to be represented by counsel, *Mechanic v. Gruensfelder,* 461 S.W.2d 298, 309 (Mo.App.1970), may not be required to testify against himself, *Gompers v. Buck's Stove & R. Co.,* 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1910), and is presumed to be innocent until proven guilty beyond a reasonable doubt. *Id.,* 221 U.S. at 444, 31 S.Ct. at 499.

forming some act and the other party does not benefit because it is too late for the imprisonment to be coercive. *Cf. Gompers v. Buck's Stove & R. Co.*, 221 U.S. 418, 442, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1910).

In keeping with the view that the purpose of civil contempt is remedial, any fines charged against a civil contemnor must be related to the actual damages suffered by the injured party and must be payable to this party. Generally, a fine levied pursuant to a conviction of civil contempt is per diem and continues only as long as the contemnor disobeys the court's order. *McNealey v. Rouse*, 264 S.W. 383, 386 (Mo. Banc 1924); *Odom v. Langston*, 358 Mo. 241, 213 S.W.2d 948, 951–52 (Banc 1948).

On the other hand, criminal contempt proceedings are punitive in nature. *Teefey v. Teefey*, 533 S.W.2d 563, 565 (Mo. Banc 1976). Their purpose is to preserve the power and vindicate the authority and dignity of the court, and to punish for disobedience of its orders. "The power of criminal contempt springs not from the needs to protect a litigant, but from the inherent power of the courts to protect the judicial system established by the people as the method of solving disputes." *Mechanic v. Gruensfelder*, 461 S.W.2d 298, 304–5 (Mo. App.1970).

It is consistent with this punitive purpose to imprison a criminal contemnor for defying a court order or injunction regardless of whether the injunction is prohibitory or mandatory, § 476.120, RSMo 1969. The question is not whether imprisonment will force the contemnor to perform some act and thus aid the injured party, but whether it will effectively vindicate the authority of the court and deter future defiance by disobedient parties. *Curtis v. Tozer*, 374 S.W.2d 557 (Mo.App.1964). While theoretically the difference between civil and criminal contempt may appear cogent, as many courts have acknowledged, it is difficult to actually ascertain which form

of contempt was ordered by a lower court or which is more appropriate. *Curtis v. Tozer*, supra; 17 C.J.S. Contempt § 5(2); 12 Am.Jur., Contempt, § 6.

Because this is a prohibitory injunction, if the defendants are merely in civil contempt, they should not have been fined $1,000 for there is no evidence that this amount is related to CFC's damages, the fine is payable to the state rather than CFC, and the fine is absolute rather than conditional upon the defendants' compliance with the injunction. Thus, if the convictions of criminal contempt were improper so were the sentences and we must reverse. However, on the other hand, if the defendants were properly held to be in criminal contempt, we must affirm for the punitive nature of the fines is warranted.

In ascertaining whether the conviction for criminal contempt was proper, we should use the following criteria: (1) was there a private or public plaintiff—Moskovitz, "Contempt of Injunctions, Civil and Criminal," 43 Colum.L.Rev. 780, 786–87 (1943); *Gompers v. Buck's Stove & R. Co.*, supra; (2) did the contempt proceeding serve a punitive or remedial purpose—43 Colum.L.Rev. at 785–86; *Teefey v. Teefey*, supra, at 565–6; (3) were there special elements of contumacy—43 Colum.L.Rev. at 796–98; (4) was the proceeding conducted as a criminal or civil proceeding—*Mechanic v. Gruensfelder*, supra; and (5) did the defendants have the requisite intent for criminal contempt—*McMullin v. Sulgrove*, 459 S.W.2d 383, 388 (Mo. Banc 1970); *Teefey v. Teefey*, supra, at 566.

These factors are used by appellate courts both in ascertaining which form of contempt was ordered by the trial court and in analyzing the propriety of a civil or criminal contempt order in a given situation. *Cf.* 43 Colum.L.Rev. at 781. We are applying them in the latter fashion.

Before the trial on the criminal contempt charges began, the court appointed the attorneys for CFC as representatives for the

state "to prosecute the criminal contempt aspects of this proceeding." In this sense the plaintiff was "public," which is characteristic of criminal contempt proceedings. *Gompers v. Buck's Stove*, supra.

■ The second factor we must consider is whether the facts of this case conform to the purpose of the criminal contempt enforcement device. The conviction of criminal contempt is intended to be punitive and it is inappropriate unless there is sufficient evidence of disrespect and threat to the judicial process to warrant its strict penalties. *Cf. State v. Koon*, 356 Mo. 284, 201 S.W.2d 446 (Banc 1947); *Teefey v. Teefey*, supra (see especially the court's warning that undue use of the criminal contempt device would have the effect of abolishing civil contempt. We find that the facts here necessitated the criminal contempt sanction, for within an eight month period, the defendants were found to have violated the injunction three times.[2] If the court allows this insolence for its judgments, its orders will become ineffective and the court will not be able to provide the assistance citizens have a right to expect from the judicial system. *State v. Koon*, supra; *Bassette v. W. B. Conkey Co.*, supra.

■ Even if this were an area where criminal contempt is generally inapplicable, it becomes appropriate after repeated violations of a court's order because the repetition constitutes a "special element of contumacy." *Nat. Popsicle Corp. v. Kroll*, 104 F.2d 259, 260 (2d Cir. 1939) ("It may well be that violations of the injunction by the defendant had become so chronic as to merit imprisonment for criminal contempt.")

In the criminal contempt proceeding the show cause order stated ". . . show cause . . . why you should not be adjudged in criminal contempt of court, and punished, incarcerated, fined, and penalized for both civil and criminal contempt." Clearly, the defendants by this language

had notice of and understood they were tried for criminal contempt. *Mechanic v. Gruensfelder*, supra. Because we do not have evidence or argument to the contrary, we assume that the court, also aware of the nature of the proceeding, conducted it with the other necessary procedural safeguards required in criminal proceedings.[3] Therefore, these convictions are not subject to reversal, as were other convictions where the defendants were not accorded the required procedural protection. *Mechanic v. Gruensfelder*, at 312. In the *Mechanic* case this court upheld the criminal contempt convictions of four of the habeas corpus petitioners but reversed the convictions of three petitioners because the evidence did not show that they had sufficient notice of the restraining order.

■ Lastly, we must decide if this defendant had the requisite intent to be convicted of criminal contempt. The distinction drawn between the intent required for the criminal and civil contempt is somewhat nebulous. For civil contempt "the general rule is that the defendant need not have acted wilfully," but "a contempt is not criminal unless it is willful." Moskovitz, Contempt of Injunctions, Civil and Criminal, 43 Colum.L.Rev. 780, 795 (1943). In *Teefey v. Teefey*, 533 S.W.2d 563, 566 (Mo. Banc 1976), the Missouri Supreme Court emphasized the importance of intent: "The thrust of criminal contempt is the *intentional* interference with the judicial process and demonstrated refusal to be bound by judicial determinations." (Emphasis added.) In *McMullin v. Sulgrove*, 459 S.W.2d 383, 388 (Mo. Banc 1970), the court held that because he did not have the requisite intent, an attorney who failed to formally notify a court that he could not appear for trial was improperly convicted of criminal contempt. It stated: "We base our ruling on the fact a court should not, and cannot in a jurisdictional sense, punish for contempt when it is

---

**2.** The first contempt hearing involved violations which occurred from April 18, 1975 to July 3, 1975. The second contempt hearing, on August 25, 1975, concerned violations which occurred from July 3, 1975 up to the hearing

date. The third hearing on Nov. 24, 1975, concerned violations occurring from Aug. 25, 1975 up to this hearing date.

**3.** See Footnote 2.

manifest no contempt of its authority was intended." Here the attorney, who was involved with another trial in another county, telephoned the secretary of the prosecuting attorney of his conflict but failed to file a written request for a continuance as required. Clearly the defendants here cannot demonstrate such a lack of intent to abuse the court's orders as was present in the *McMullin* case.

 It is not clear whether the intent required is the intent to do the specific act which is prohibited by the court or the intent to defy the court. *Cf.* 43 Colum.L. Rev. at 794. Obviously, it is not merely the former for that would appear to be sufficient for civil contempt and thus the element of intent would become worthless as a distinguishing criteria. Practically speaking, it cannot be the latter for this would be almost impossible to prove. Therefore it seems that the requisite intent for a criminal conviction is somewhere in between—an intent to do the prohibited act not only with the knowledge that it will harm the other party but also with a careless and imprudent disregard for the power and authority of the court which buttresses the prohibition.

Given this understanding of the intent element, it is at least arguable that the defendants did not have the requisite intent to be charged with criminal contempt, despite the repeated convictions. The first conviction of contempt was for civil contempt and therefore is not in question here. The second conviction for contempt, which was both civil and criminal, was based on work the defendants had done for five establishments since the injunction. The services performed, however, for four of these establishments were pursuant to contracts entered into prior to the injunction. As for the fifth establishment, there was evidence that the work the defendants performed had not been done by CFC previously and therefore could be interpreted as not within the injunction. The third conviction, also for civil and criminal contempt, was based upon the services rendered for two establishments, Tennessee Jed's Restau-

rants and the Coca Cola plant. Although the judge disregarded it, there was evidence that Tennessee Jed's had not been a prior customer of CFC and that the services performed at the Coca Cola plant were not janitorial, and thus not prohibited by the injunction. In this manner, it is possible to find that the defendants had the intent to abide by the injunction and only perform services they legitimately believed to be outside of the injunction's prohibitions.

 However, a stronger case can be made that the defendants had the requisite intent. The trial court was faced with a question of credibility—did Bronska, in good faith, believe his actions were not prohibited by the injunction, or was he attempting to circumvent the letter and spirit of the injunction by redefining the restrictive terms as suited his needs. As stated, this court is bound by the standard of review in *Murphy v. Carron*, supra: ". . . the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." 536 S.W.2d 30, 32 (Mo. Banc 1976). This deference to the trial court weighs heavily in favor of affirming its finding of intent. In addition, this injunction is almost a direct quote from Bronska's contract with CFC, which initially set the restrictions which would apply to Bronska's activities if his employment with CFC terminated. *Chemical Fireproofing Corp. v. Bronska*, 542 S.W.2d 74, 79 (Mo.App.1976). Moreover, this court has previously determined that this injunction "clearly and specifically" described the acts enjoined.

 Because of the trial court's superior position to judge the credibility of the witnesses and the previous finding by this court that the injunction was specific enough to apprise the defendants of what activities were prohibited, a finding of intentional disregard for the judicial processes is warranted. A review of the above factors indicates that the conviction for criminal contempt was proper in this case.

In addition, there is ample precedent to support this finding. In *Mechanic v. Gruensfelder*, supra, four students were found to be in criminal contempt for violating a temporary restraining order secured by Washington University to prevent rioting. In *Curtis v. Tozer*, 374 S.W.2d 557 (Mo.App. 1964), demonstrators were held to be in criminal contempt for violating a temporary restraining order prohibiting their demonstration in front of the Jefferson Bank & Trust Company. In *Limerick v. Riback*, 204 Mo.App. 321, 224 S.W. 45 (Mo. App.1920), the court found the defendants to be in criminal contempt for violating an injunction requiring them to carefully dispose of animal carcasses they used at their packaging plant. In all of the above cases the injunction was sought and the contempt proceedings brought by private parties. In all cases criminal contempt was found to be appropriate after only one violation of the injunction which was secured in a civil suit. Here, there were three violations before the defendants actually received a punishment pursuant to a criminal contempt charge, and the state was represented as a party. Clearly, if the facts in the above cases support a finding that the respective defendants intentionally interfered with the judicial process, the facts in the present case warrant such a conclusion.

The defendants argue that the case of *Huegel v. Kimber*, 241 Mo.App. 49, 228 S.W.2d 833, (1950), in which the criminal conviction was found to be improper, is controlling. There the defendant was proscribed from engaging in a certain type of business pursuant to a restrictive covenant which had been upheld by the courts. The defendant was found guilty of criminal contempt for violating the covenant. The court of appeals reversed, saying civil contempt, not criminal, was appropriate. That case is distinguishable from the case at hand in two crucial ways—the defendant had not previously been convicted of contempt, and the proceeding was not instituted as criminal contempt. These differences are relevant as to whether the punitive nature of criminal contempt was appropriate, whether there were special elements of contumacy, whether the defendants had notice of the nature of the proceedings and were accorded the necessary safeguards, and whether the defendants had the requisite intent. For these reasons, we do not find the *Huegel* case controlling.

In our view, the above discourse has laid to rest the appellants' contention that their convictions for criminal contempt were improper. The appellants next argument, that the $1,000 fine levied against each defendant, is based upon the premise that the criminal contempt conviction was erroneous. Because we have determined that the appellants were rightly convicted of criminal contempt, there is no merit to this assertion.

The defendants also argue that even if criminal contempt is appropriate, the injunction order is too vague to apprise the defendants of their rights and thus to support the conviction. Beyond noting that this claim is frivolous since the language in the injunction is almost identical to Bronska's employment contract with CFC and since this court specifically found the injunction to be clear and specific when this case was before us previously, *Chemical Fireproofing Corp. v. Bronska*, 542 S.W.2d 74 (Mo.App.1976), we will not review this contention. It is well settled that a conviction for criminal contempt may not be reviewed by appeal. *Ex Parte Howell*, 273 Mo. 96, 200 S.W. 65 (1918); *Holt v. McLaughlin*, 357 Mo. 844, 210 S.W.2d 1006 (1948); *State v. Norman*, 193 S.W.2d 391, 392 (Mo.App.1946) and *Teefey v. Teefey*, 533 S.W.2d 563 (Mo. Banc 1976).

Contempt proceedings are *sui generis* and ". . . are triable only by the court against whose authority the contempts are charged." No other court may inquire into the charge. ". . . 'In order that a court may compel obedience to his orders, it must have the right to inquire whether there has been any disobedience thereof. To submit the question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the proceeding of half its efficiency.'" *Bes-*

*sette v. Conkey Co.,* 194 U.S. at 337, 24 S.Ct. at 670.

 For this reason, our state statute does not provide a right of appeal for a conviction of criminal contempt and we are unable to review the propriety of the criminal contempt conviction here beyond what has already been necessary in order to decide whether the defendants were properly convicted of criminal as opposed to civil contempt.

Accordingly, judgment is affirmed.

STEWART and REINHARD, JJ., concur.